UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

JAMES E. RODGERS
LAURA A. RODGERS                              Case No. 97-13515-WSS-13

HELEN MARIE THOMPSON                          Case No. 99-12293-MAM-13

RAYMOND LEE HUBER
SANDRA KAY HUBER                              Case No. 01-12356-WSS-13

EDDIE LEE ALSTON
CHERYL MELINDA ALSTON                         Case No. 01-14265-WSS-13

RUBY LEE HENDERSON                            Case No. 01-14436-WSS-13

WILLIE O. GILMORE
DELLA R. GILMORE                              Case No. 01-15031-WSS-13

ELMER NMN THOMAS, JR.                         Case No. 01-15878-WSS-13

EVONNE PELT LAWSON                            Case No. 02-10060-MAM-13

WILLIE ANTHONY HIXON                          Case No. 02-13282-MAM-13

TEDDY WAYNE FORD
BETTY JO FORD                                 Case No. 02-14374-WSS-7

HANNAH SCOTT MOORE                            Case No. 02-15026-MAM-7

WALTER JAMES BELL                             Case No. 03-10625-MAM-13

LUE ETHEL MCCASKEY                            Case No. 03-10704-MAM-7

GEORGIA M. BARRON                             Case No. 03-15219-MAM-13

FREDDY M. FOLKES                              Case No. 03-16037-MAM-7

TIMOTHY KEITH LANE                            Case No. 03-16409-MAM-13

WILLIE MAE LEONARD                            Case No. 03-16574-MAM-13

KITTY JONES YATES                             Case No. 04-11486-WSS-13

PATRICIA CARSTARPHEN      Case No. 04-11621-MAM-7

HELEN GAYE SHIPP
ROBERT L. SHIPP       Case No. 04-16206-WSS-7

HARVEY ALBERT CROSBY
JEAN CAROLYN CROSBY     Case No. 04-17103-MAM-13

JAMES MARSHALL GLAZE
DOROTHY ANN GLAZE      Case No. 05-12788-MAM-7

JEFFERSON DAVIS
ELAINE R. DAVIS        Case No. 05-15098-MAM-13

     Debtors.

## ORDER GRANTING IN PART AND DENYING IN PART APPLICATIONS FOR EMPLOYMENT, PAYMENT OF FEES, AND COMPROMISE OF SETTLEMENT

  David Anderson, Deanna Weidner, and Ryan Cochran, Attorneys for Group Counsel, Birmingham, AL
  Mark Zimlich, Attorney for the Bankruptcy Administrator, Mobile, AL
  Steve Olen, Attorney for Chapter 13 Trustee and Denise Littleton, Mobile, AL
  Richard Maples, Attorney for Trustee Verneuille, Mobile, AL
  Von Memory, Attorney for Morris Bart, Montgomery, AL
  John C. McAleer, Chapter 13 Trustee
  Charles Baer, Attorney for the United States, Mobile, AL
  Joe Verneuille Jr., Trustee, Mobile, AL
  Ellen Turner, Attorney for Debtors, Mobile, AL
  Jeffery J. Hartley, Attorney for Chapter 13 Trustee, Mobile, AL

  This matter came before the Court en banc on Group Counsel's[1] applications to employ,

payment of fees, and for approval of estates' acceptance of an offer in a group personal injury

---

  [1]Since the applications and briefs in the all of the cases make the same arguments, Gallagher, Goss, Freese, and Stuckey will be referred to as "Group Counsel" throughout the remainder of this opinion.

settlement.[2]  The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and

1334 and the Order of Reference of the District Court.  These are core proceedings pursuant to 28

U.S.C. § 157(b)(2), and the Court has authority to enter a final order.  For the reasons indicated

below, the Court is granting in part and denying in part the above applications.

## FACTS[3]

Rezulin was a drug for Type 2 diabetes sufferers that was taken off the market in 2000.

Some of the above-named debtors[4] have signed retainer agreements with either Morris Bart,

Richard A. Freese, Jason Stuckey, or Chris Hellums ("Referring Counsel") to pursue claims

against the manufacturers and/or distributers of Rezulin, Warner Lambert LLC and Pfizer, Inc.

("Warner and Pfizer").  According to Group Counsel, all of the debtors retained their respective

lawyers in 2000 or 2001.

Morris Bart served as initial counsel for a 33.33% contingent fee rate for the following

debtors: (1) Evonne Pelt Lawson (Chapter 13); (2) Hannah Scott Moore (Chapter 7); (3) Freddy

---

[2]The applications in the following cases were brought by Michael T. Gallagher, Tim K. Goss, Richard A. Freese, and Jason Stuckey: (1) Betty Jo Ford; (2) Della R. Gilmore; (3) Raymond Lee Huber; and (4) Patricia Carstarphen.  No application was filed in the Annie M. McKenzie case, yet it was listed in movants' briefs.  To the extent they seek approval of employment in that case, it is denied.  In the remaining cases, the applications were brought by Gallagher, Goss, and Freese.

[3]The Applicants offered Gallagher's Exhibits #1-3.  The objecting parties offered Trustee's Exhibits #1-27.  After the hearing, as allowed by the Court, the Applicants objected to the relevancy of Trustee's Exhibits #11, #14-18, #20-21, and #24.  The outcome of the case will not be affected whether the Court sustains or overrules the Applicants' objection.  Therefore, for purposes of this ruling, the Court is excluding Trustee's Exhibits #11, #14-18, #20-21, and #24.

[4]The following debtors did not retain an attorney to seek a Rezulin claim: Harvey Albert Crosby, Dorothy Ann Glaze, Elaine R. Davis, Laura A. Rodgers, Sandra Kay Huber, Cheryl Melinda Alston, Willie O. Gilmore, Teddy Wayne Ford, and Robert L. Shipp.

3

M. Folkes (Chapter 7); (4) Timothy Keith Lane (Chapter 13); (5) Willie Mae Leonard (Chapter

13); (6) Eddie Lee Alston (Chapter 13); and (7) Elmer Thomas (Chapter 13). Morris Bart has

sought his fee by filing applications for employment and payment of fees in the Lawson and

Alston cases. Those applications were separately dealt with and are not at issue in this

proceeding. However, Bart associated as counsel in the rest of the cases with Michael T.

Gallagher, who is claiming his portion of the fees in the cases referred to him by Bart. According

to Group Counsel's applications for employment and for payment of fees in the Moore, Lane,

Leonard, Thomas, and Folkes cases, Bart "has waived all of his fees and expenses regarding this

personal injury claim and abandoned" the client to Group Counsel.

At this Court's October 30, 2006, hearing, Group Counsel's attorney, David Anderson,

stated that Gallagher rejected all of Bart's referrals when he found out the debtors filed for

bankruptcy. In the Alston case, however, Gallagher, Goss, and Freese's application to employ

and for payment of fees noted that when Gallagher found out Mr. Alston had filed for

bankruptcy,

> Gallagher had determined to reject the referral of all Bart's clients
> who had potential bankruptcy issues unless Bart agreed to handle
> his clients' bankruptcy issues, including determining whether the
> estate owned the claim and obtaining any necessary court
> approvals. In November 2003, Bart agreed to handle the
> bankruptcy issues for each of his clients who had filed bankruptcy
> and for whom he wanted to refer to [Gallagher, Goss, and Freese]
> for participation in the group settlement.

Richard A. Freese served as co-counsel with Jason Stuckey for a 40% contingent fee rate

for the following debtors: (1) Walter James Bell (Chapter 13); (2) Georgia M. Barron (Chapter

13); (3) Raymond Lee Huber (Chapter 13); (4) Della R. Gilmore (Chapter 13); and (5) Betty Jo

4

Ford (Chapter 7). On December 21, 2005, the Court previously approved an application filed by Denise Littleton, the Chapter 7 trustee, to employ Richard Freese as attorney in Betty Jo Ford's case.

Richard A. Freese served as counsel for a 40% contingent fee rate for the following debtors: (1) Willie Anthony Hixon (Chapter 13); (2) Lue Ethel McCaskey (Chapter 7); and (3) James Marshall Glaze (Chapter 7).

Chris Hellum served as counsel for a 50% contingent fee rate for Jean Crosby (Chapter 13). He also served as counsel for a 40% contingent fee rate for (1) Kitty Jones Yates (Chapter 13) and (2) Helen Gaye Shipp (Chapter 7). In their brief, Group Counsel specify that on August 25, 2006, this Court granted the employment and payment of fees to Pittman, Hooks, Dutton, Kirby & Hellums, P.C. and Gardberg & Clausen, P.C in Kitty Jones Yates's case. Moreover, this Court also approved the acceptance of the settlement offer to Ms. Yates. In that case alone, Group Counsel merely seeks employment, stating that the rest of their application is due to be declared moot.

Gallagher was pursuing an action against Warner and Pfizer. The Referring Counsel associated themselves with Gallagher to jointly pursue the debtors' cases against Warner and Pfizer. The applications in each respective debtor's case mention who the Referring Counsel was and discuss how they intended to split the fees earned from any recovery on each of the claims. The arrangements that Gallagher had with each Referring Counsel were not exactly the same for reasons that were not explained to the Court.

Some of the debtors retained the Referring Counsel prior to filing for bankruptcy and some retained them afterwards. Likewise, some of the cases were referred to Gallagher prior to

the time the debtors filed for bankruptcy and some were referred to Gallagher after the debtors filed for bankruptcy. It is unclear if the debtors themselves knew of the referral agreements or that Gallagher was the attorney to whom the cases had been referred.[5]

This Court held a hearing on the matter on October 30, 2006. Besides exhibits, there was no evidence presented on approval of the attorney's fees and the compromises of the claims of the debtors. However, the Court has gleaned these pertinent facts.

At some time after the referral of the Rezulin cases to Gallagher, Gallagher claims he informed Referring Counsel in some or all of the cases that he was "rejecting" the cases because he had learned that the debtors had filed for bankruptcy. There was no evidence presented as to what cases were rejected, how the rejection was communicated to the debtors, what was expected of Referring Counsel to get Gallagher to "accept" the cases again, or whether the debtors ever knew that their cases were not being pursued. Even after "rejection" of the cases, Gallagher nonetheless continued to monitor them. Despite claiming to exclude them from the Rezulin settlement that he reached for Rezulin claimants in December of 2004, Gallagher's staff, along with David Anderson and staff, "maintained charts for excluded persons that monitored:

1) The bankruptcy case information.
2) Abandonments.
3) Dismissed cases.
4) Closed cases.
5) Plan payouts."

In December of 2004, Warner and Pfizer proposed a settlement for Gallagher's clients

---

[5]In the Alston case, the debtor signed a retainer agreement with Bart. The agreement stated that Bart could associate the debtor's case with outside counsel. Beyond this, the Court was provided no further information regarding whether any debtor knew that an actual association had taken place with outside counsel and whether Gallagher was, in fact, the outside counsel that was retained.

6

that involved payments in an amount based upon the exposure and/or injury suffered by each claimant. Gallagher claims that the above-named debtors were merely exposed to Rezulin but suffered no injuries as a result of ingesting it. No evidence was presented to support the claim that none of the above-named debtors suffered injuries. Nonetheless, Gallagher says that the settlement being offered by Warner and Pfizer for "no injury", i.e. exposure only, cases is $4,503.58. The settlement was not actually funded until June of 2006 although it was negotiated in December of 2004. Despite claiming that he rejected all of the above-named debtors' cases since they were in bankruptcy, Gallagher nonetheless claims he has offers pending for each of them that he can consummate should the Court grant his applications for employment, fees, and approval of the settlement offers.

## THE APPLICATIONS AND RESPONSES

On September 18, 2006, Group Counsel filed an application for employment, payment of fees, and approval of the personal injury settlement in Eddie Lee Alston's case. On September 25, 2006, Group Counsel filed similar applications in the rest of the above-named debtors' cases. Each of the applications state that Group Counsel and each respective debtor request the Court to grant their employment, the right to receive payment of fees, and, if the settlements are property of the estate, approval of the settlements. The applications sought: (1) a determination by the Court as to whether each respective debtor or his or her estate has the authority to accept or reject the offers; (2) a request that the Court apply Bankruptcy Rule 9019 to accept the offer should it find that the estate owns the claim; (3) a request that the Court grant Group Counsel's applications to employ and for payment of fees should the estate own the claims and accept the offers; and (4) deny their applications as moot should the Court deem that the estate does not

7

own the claims. There is no request in any of the applications that the Court grant Group Counsel's employment and payment of fees should it find that the debtors own the claims even though Group Counsel claims it does not represent any of the debtors. Despite claiming that they do not represent any of the above-named debtors, each of Group Counsel's applications for employment and payment of fees states that should their applications for employment and fees be denied by this Court, they will seek to withdraw as counsel in the state court Rezulin cases:

> If the offer is not accepted, its expiration or rejection will not affect the group settlement. Gallagher will seek to withdraw from the [case] because a trial of a personal injury case where there is no injury will most likely result in no award at all. The Trustees and Debtors can then continue with Referring Counsel or hire counsel of their choice to try the same. If the offer is accepted then Gallagher will perform the services to settle the claim.

The Chapter 7 and 13 trustees filed objections to the applications in all but 5 cases.[6] As to the cases in which no objections were filed, the applications will be approved without objection.

The Chapter 13 trustee, John C. McAleer, argued that Referring Counsel and Gallagher knew about most of the bankruptcy filings prior to reaching a settlement offer with Warner and Pfizer in December of 2004. He further argues that Group Counsel have failed to explain why it took them until September of 2006 (1 year and 10 months from the December 2004 settlement offer) to file the present applications for employment and fees. Consequently, the Chapter 13 trustee requested this Court to deny employment and fees to Group Counsel. At this Court's October 30, 2006, hearing, however, the Chapter 13 trustee amended his position. He asserts that

---

[6]No objections were filed in the following debtors' cases: (1) Helen Marie Thompson (Chapter 13); (2) Jefferson Davis (Chapter 13); (3) James E. Rogers (Chapter 13); and (4) Ruby Lee Henderson (Chapter 13). The trustee abandoned the estate's claim in debtor Patricia Carstarphen's case (Chapter 7). Therefore, the applications for employment, fees, and approval of the settlement offers in these cases will be approved.

8

he does not object to the employment of Group Counsel so long as the employment is approved as of the date the application to be employed was filed. He objects to any employment on a nunc pro tunc basis.

All three of the Chapter 7 trustees, Denise Littleton, Lonnie L. Mixon, and Joseph O. Verneuille Jr., filed objections to Group Counsel's applications in the Chapter 7 cases. In their objections, the trustees argue that Gallagher was aware of each debtor's bankruptcy filing well in advance of the filing of the present applications for employment and fees. Each of them further argue that Group Counsel's applications were filed on behalf of each respective Chapter 7 trustee, all of whom claim that they never authorized such a claim to be filed on their behalf. Consequently, Ms. Littleton and Mr. Mixon request this Court to deny employment and fees to Group Counsel. Mr. Verneuille argues that since Group Counsel is seeking approval of their fee after they have reached a settlement, they are seeking nunc pro tunc approval. He further argues that "[s]uch after the fact approval should only be granted in 'exceptional circumstances[,]'" which Group Counsel have failed to claim and prove to the Court. Therefore, he also requests this Court to deny employment and fees to Group Counsel.

## LAW

There are 6 issues that have been raised by the parties. These issues are (1) whether the Rezulin claims constituted property of the estate on the date the debtors filed for bankruptcy and thus, whether the settlements require court approval; (2) whether the above-named debtors concealed their bankruptcy filings from Gallagher and/or their counsel; (3) whether Gallagher rejected the above-named debtors' cases and excluded them from the group settlement offer with Warner and Pfizer upon finding that they had filed for bankruptcy; (4) whether the above-named

9

debtors have the right to be included in the group settlement with Warner and Pfizer even if the Court denies all or part of Group Counsel's applications for employment and fees; (5) whether Group Counsel's applications for employment and payment of fees should be granted or denied; and (6) whether Group Counsel should be allowed to represent the debtors in these bankruptcy proceedings on a nunc pro tunc basis. They will be addressed in turn.

The burden of proof as to the approval of employment and payment of fees is on Group Counsel. They must prove their cases by a preponderance of the evidence. *See In re Birky*, 296 B.R. 480, 484 (Bankr. C.D. Ill. 2003) (stating that a preponderance of the evidence standard applies under 11 U.S.C. § 330).

A.

The first issue involves whether the Rezulin claims constituted property of the estate on the date the debtors filed for bankruptcy. If the claims are not property of the estate, then this Court has no jurisdiction over the settlements or the employment and payment of Group Counsel. If the claims are property of the debtors' estates, then the settlements and employment and compensation of Group Counsel are under this Court's jurisdiction.

Section 541 of the Bankruptcy Code governs what constitutes "property of the estate" of a debtor. 11 U.S.C. § 541(a)(1) states that "all legal or equitable interests of the debtor in property" become property of the estate "as of the commencement of the case." Case law in the Eleventh Circuit defines property of the estate in a very broad fashion in light of the broad language of the statute. *See Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez)*, 224 F.3d. 1273, 1278 (11th Cir. 2000) ("Congress intended the scope of § 541(a)(1) to be broad."). Whether a debtor's interest constitutes property of the estate is decided under federal law.

10

*Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir. 1998). What constitutes "legal and equitable interests" in property is governed by state law. *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1242 (11th Cir. 2006).

The Applicants cite to *Hinton v. Monsanto Co.* to show that "Alabama law requires a manifest, present injury before a plaintiff may recover in tort[,]" and since the above-named debtors experienced no injuries, they had no cause of action under Alabama law. 813 So. 2d 827, 829 (Ala. 2001). Counsel for the Chapter 13 trustee argued that the *Hinton* case does not support Group Counsel's position since they failed to present any evidence that none of the above-named debtors experienced or alleged an injury as a result of using Rezulin. He further argued that if Group Counsel truly believed that the above-named debtors suffered no injury and therefore had no claim, why were they pursuing a class action and/or settlement on their behalf, potentially in violation of Rule 11 of the Federal Rules of Civil Procedure? *See* FED. R. CIV. P. 11(b)(2) ("By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is representing that . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . . ").

This Court concludes that the *Hinton* case is not like the situation in these cases. In *Hinton*, the defendant company was contesting liability to the plaintiff based upon the fact there was no present manifest injury. *See id.* at 828. The Alabama Supreme Court ruled that, in such a circumstance, there was no cause of action. *Id.* Here, the case is the opposite. Warner and Pfizer are not contesting liability based upon a present manifest injury. They have agreed to pay damages for exposure and/or whatever injury was caused. Therefore, regardless of what the

11

result would be if Warner and Pfizer had contested liability, these debtors, based upon ingestion of Rezulin alone, have claims against the drug companies. Those claims did not arise in June 2006; they arose when they ingested Rezulin. If Group Counsel is correct that the drug companies have a good defense against the claims, Group Counsel did an excellent job in negotiating settlements for the debtors. The fact is that regardless of the merits of the cases, Gallagher has obtained settlements on causes of action that the debtors have due to using Rezulin in the years 1997 to 2000. The claims, therefore, arose at the time of ingestion. Therefore, as to all cases in which any ingestion of the drug occurred before bankruptcy, the action is a prepetition claim and property of the estate in the chapter 7 cases. In the chapter 13 cases, the claims remained property of the estate after confirmation of the plan because of the plan and confirmation order language in this district. Property of the estate does not revest in the debtor until discharge or dismissal. *See* Case No. 03-10625 [Docket No. 3].[7] This is unlike the case cited by the movants in their brief. *See Telfair v. First Union Mortgage Co.*, 216 F.3d 1333 (11th Cir. 2000). The bankruptcy court in that case revested property in a debtor at the time of confirmation of a chapter 13 plan. *Id.*; *see Dionne v. Colvin (In re Moore)*, 312 B.R. 902, 907-08 (Bankr. N.D. Ala. 2004) (on facts similar to this Court's case, *Telfair* was similarly distinguished).

The Applicants also cite to an Eleventh Circuit case. *See In re Bracewell*, 454 F.3d 1234, 1242 (11th Cir. 2006). In that case, the debtor suffered a crop loss in 2001, the year prior to his filing for Chapter 12. *Id.* at 1236. Subsequently, the debtor converted his case to a Chapter 7.

---

[7]This is the standard language required in all Chapter 13 plans in the Bankruptcy Court for the Southern District of Alabama. The same language appears in all of the Chapter 13 plans that are the subject of this opinion.

12

*Id.* Soon thereafter, Congress passed a law allowing for reimbursement to those who had suffered crop losses in 2001. *Id.* The debtor was entitled to such payments. *Id.* at 1237. The trustee argued that the crop loss payments constituted property of the estate. *Id.* at 1236. The Eleventh Circuit disagreed, finding that the debtor had no legal or equitable interest in the crop loss payments until the legislation was enacted by Congress. *Id.* at 1239. Since this occurred after the debtor converted his bankruptcy to a Chapter 7, the payments he received did not constitute property of the estate. *Id.* at 1247. This case is not like these cases. In these cases, the debtors did have claims that arose before the filing of their cases.

Gallagher also cites to *In re Smith* for the same proposition. 293 B.R. 786 (Bankr. D. Kan. 2004). In that case, the debtor was taking Fen-Phen at the time she filed for bankruptcy. *Id.* at 787. Subsequently, Fen-Phen was taken off the market. *Id.* Thereafter, the debtor started experiencing shortness of breath. *Id.* Her aunt informed her of an advertisement telling consumers of Fen-Phen that if they had ingested the drug, they should seek a medical examination. *Id.* at 788. Although the record did not establish whether or not the debtor actually suffered an injury from ingesting the drug, the record did show that after the debtor underwent a medical examination, she received a settlement award by participating in a class action suit regarding the use of Fen-Phen. *Id.* at 787. The trustee sought to reopen the case and include the settlement award in the estate. *Id.* The Court declined to do so, finding that under Kansas law, a cause of action does not accrue until an injury is discovered. *Id.* at 789-90. Since the debtor did not discover her injury until after she filed for bankruptcy, the settlement award she received did not constitute property of the estate. *Id.* at 790. Since the court in that case refused to reopen a case to include a Fen-Phen lawsuit on the debtor's schedules where the debtor did not suffer a

13

pre-petition injury from its usage, the Applicants argue that the same result should prevail in this case. The trustees distinguished the *In re Smith* case by noting that it involved a state statute that was different from Alabama's. Kansas employs a "discovery rule" for such causes of action. KAN. STAT. ANN. § 60-513(b) ("[C]auses of action . . . shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party."). Alabama does not impose a "substantial injury rule". "A cause of action accrues when the act complained of results in injury to the plaintiff." *Colburn v. Wilson*, 570 So.2d 652, 654 (Ala. 1990) (citing *Guthrie v. BioMedical Labs., Inc.*, 442 So.3d 92 (Ala. 1983)); ALA. CODE § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). For this reason, the Court concludes that the Smith case is inapposite.

The Court reiterates that the Applicants failed to present evidence that any or all of the debtors had suffered no injury due to the ingestion of Rezulin. Without evidence, it is just as likely that the claimants did suffer a present manifest injury. Therefore, the Court finds that the Rezulin claims were property of the estate on the date that the above-named debtors filed for bankruptcy. Since the claims were property of the debtors' estates, court approval of the settlement offers is necessary.

B.

The second issue involves whether the above-named debtors concealed their bankruptcy filings from Gallagher and/or their Referring Counsel. Gallagher claims that they did, thereby

14

fraudulently inducing him to initially assume their representation until he later discovered on his own that they filed for bankruptcy. No evidence was presented to substantiate this point. Therefore, the Court must find that the above-named debtors did not conceal their bankruptcy filings from Gallagher and/or their Referring Counsel.

C.

The third issue involves whether Gallagher rejected the above-named debtors' cases and excluded them from the group settlement offer with Warner and Pfizer upon finding that they had filed for bankruptcy. Gallagher claims that he conducted PACER searches in 2003 and 2004, thereby discovering that the above-named debtors had filed for bankruptcy. Upon learning this information, Gallagher claims that he rejected referrals from Group Counsel and excluded the above-named debtors from the group settlement with Warner and Pfizer. However, no evidence was presented to the Court substantiating Gallagher's rejection of these referrals, such as letters he may have sent or testimony by any of the Referring Counsel or debtors that they had received notice of such rejection. Instead, Gallagher notes in his application to employ and for payment of fees in Mr. Alston's case that upon learning of the bankruptcy filings,

> Gallagher had determined to reject the referral of all Bart's clients who had potential bankruptcy issues unless Bart agreed to handle his clients' bankruptcy issues, including determining whether the estate owned the claim and obtaining any necessary court approvals. In November 2003, Bart agreed to handle the bankruptcy issues for each of his clients who had filed bankruptcy and for whom he wanted to refer to [Gallagher, Goss, and Freese] for participation in the group settlement.

What this tells the Court, at least in regards to the cases referred to Gallagher by Bart, is that although Gallagher contemplated rejecting Bart's referrals, he declined to do so when Bart

15

assured him that he would handle all bankruptcy issues.

Moreover, each of Group Counsel's applications for employment and payment of fees states that should their applications for employment and fees be denied by this Court, they will seek to withdraw as counsel in the state court Rezulin cases:

> If the offer is not accepted, its expiration or rejection will not affect the group settlement. Gallagher will seek to withdraw from the [case] because a trial of a personal injury case where there is no injury will most likely result in no award at all. The Trustees and Debtors can then continue with Referring Counsel or hire counsel of their choice to try the same. If the offer is accepted then Gallagher will perform the services to settle the claim.

If, as Gallagher has so vehemently argued to this Court, that he (1) rejected each of the referrals, (2) excluded the above-named debtors from the settlement, and/or (3) did not represent any of the above-named debtors, then why would he state that should the Court deny his applications for employment and fees, he would seek to withdraw from the state court cases? An attorney who does not represent a plaintiff does not need to withdraw from that plaintiff's case. These two factors weigh heavily against a finding that Gallagher rejected the above-named debtors' claims and excluded them from the group settlement with Warner and Pfizer, especially since both statements were made in documents prepared by Gallagher's side. Even had the above two statements not been made, the Court would still reach the same conclusion since Gallagher provided no evidence to support a contrary conclusion.

### D.

The fourth issue involves whether the above-named debtors have the right to be included in the group settlement with Warner and Pfizer even if the Court denies all or part of Group Counsel's applications for employment and fees. The Applicants, at least in counsel's argument

16

at this Court's October 30, 2006, hearing, alleged that the debtors have no right to be in the settlement unless Gallagher accepts their cases, and Gallagher will not accept the cases and put them into the settlement class unless all of the Applicant's fees and expenses are approved simultaneously with the approval of the settlements.

An attorney, once employed, must zealously represent his or her client. *See* ALA. R. PROF'L CONDUCT PREAMBLE ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. [I]n all professional functions a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation."); TEX. R. PROF'L CONDUCT PREAMBLE (3) ("In all professional functions, a lawyer should zealously pursue client's interest within the bounds of the law. In doing so, a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation.") There is no question that Gallagher was, at his retention through the referral agreements, and is today, the attorney for the debtors in these cases. There was no evidence offered that he even attempted to withdraw from these debtors' cases. Gallagher asserts that he did sign referral agreements with all of the Referring Counsel, but that he "rejected" the cases later when he found out about the debtors' bankruptcy filings. It is unclear from the evidence that Gallagher ever notified the clients that he rejected their representation or that he even notified Referring Counsel of this fact. The Texas and Alabama ethics rules require, at a minimum, notice to the client before a lawyer may properly and completely terminate his or her representation of the client. *See* ALA. R. PROF'L CONDUCT 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client

[and] allowing time for employment of other counsel . . . . "); TEX. R. PROF'L CONDUCT 1.15(d) (same).

The Court is also dubious about whether Gallagher truly did "reject" the cases when he continued to monitor their status, has now moved to include the debtors in the settlement, and is seeking to collect fees from their settlements. There were no documents that showed any agreements signed that "revived" the prior agreements. If he had truly withdrawn, it would seem a new referral agreement or revival of the old one would be necessary. Moreover, as mentioned above under Part C, Gallagher's documents even conceded that (1) he contemplated rejecting clients referred to him by Bart yet declined to do so when Bart promised to under the bankruptcy issues, and (2) states that he will seek withdrawal from the debtors' state court cases should this Court decline his applications for employment and fees. These two facts further help this Court lead to the conclusion that Gallagher was and is counsel for all of the above-named debtors. Since no evidence was presented that Gallagher rejected the above-named debtors' cases, and since the Court has already determined that he was their counsel and continues to be so, the Court holds that the above-named debtors have the right to be included in the group settlement offer with Warner and Pfizer regardless of this Court's grant or denial of Group Counsel's applications for employment and fees.

E.

The fifth issue is whether Group Counsel's applications for employment and payment of fees should be granted or denied. In order to obtain approval of employment, special counsel must obtain approval of the trustee in a chapter 7 or 13 case. 11 U.S.C. § 327. That approval was not sought nor was any trustee contacted for such approval before these applications were

18

filed. In his brief, Gallagher alleges that the trustees argue that Gallagher had a duty to represent the bankruptcy estates upon finding out that the above-named debtors had filed for bankruptcy.[8] Although the Court can find no instance where such an assertion was made by any trustee, Gallagher nonetheless rebuts the trustees' alleged argument by stating that under Section 327, only the trustee or the debtor may hire a professional to represent the debtor or the estate for a special purpose. In Group Counsel's applications for employment and payment of fees, it is asserted that Group Counsel and each respective debtor requests the Court to accept their employment. However, Group Counsel presented no evidence, besides the mere statement mentioned in their applications, that each respective debtor requested Group Counsel to file an application for employment to assist them in their Rezulin claims. Weighing against a finding that the debtors requested such action be taken is the fact that no evidence was presented to the Court that Gallagher informed any of these debtors whether he "accepted" and subsequently "rejected" their cases. Moreover, it appears peculiar to this Court yet once again that Gallagher, who so vehemently argues that he did not represent any of the above-named debtors, nonetheless files a "lawyerly" paper with this Court on behalf of each "non-client" debtor.

In further support of his rebuttal of the trustees' alleged argument that Gallagher was required to represent the estate, Gallager cites to *In re Wapi* for the proposition that Section 327 limits the retention of professionals to the trustee or the debtor. 171 B.R. 130 (Bankr. N.D. Ala. 1994). Gallagher is correct that the *In re Wapi* case stands for such a proposition. In fact, that court went so far as to say that when neither the trustee nor the debtor files such an application,

---

[8]After hearing all of the trustees' arguments and reading all of their briefs, the Court can find no instance where any of the trustees make such an argument.

Case 05-15098    Doc 32    Filed 12/07/06    Entered 12/07/06 11:27:59    Desc Main
Document    Page 19 of 23

"this Court has no authority whatsoever to approve . . . employment by its own application" or that of the professional seeking to be employed. *Id*. at 133. Despite strongly supporting this case and the message it stands for in one part of his brief, Gallagher argues in another part of his brief that his applications for employment and fees should be granted by this Court. However, his applications were filed with the Court by Group Counsel and not by either the trustee or each respective debtor. Therefore, the Court will accept Gallagher's *In re Wapi* argument and find that when neither the trustee nor the debtors seek employment of the special counsel, the employment is due to be denied. However, if Group Counsel desires to seek employment in the Chapter 13 cases in which the trustee posed no objection, they may submit a written request for employment to this Court within 20 days of entry of his order. Such employment, if pursued by Group Counsel, will be granted as of the day the applications seeking employment were first filed to avoid any nunc pro tunc issue.[9] The remainder of Group Counsel's application in the Kitty Jones Yates's case is deemed moot.

F.

The sixth issue involves whether Group Counsel's applications for employment and fees should be granted on a nunc pro tunc basis.

> It is well established . . . that before a professional can be awarded an allowance out of the funds of the estate, the employment must be authorized as a general rule prior to the commencement of the performance of the services. While nunc pro tunc approvals should be the exception, it may be proper upon a showing, first, that the application would have been approved had the same been present prior to the employment of the professional

---

[9]Group Counsel's application for employment was filed on September 18, 2006, in Eddie Lee Alston's case. Group Counsel's applications were filed on September 25, 2006, in all of the other applicable cases.

Case 05-15098    Doc 32    Filed 12/07/06    Entered 12/07/06 11:27:59    Desc Main
Document    Page 20 of 23

and, second, the failure to file a timely application was due to
excusable neglect and the fault of the trustee or the [debtor] and
not the professional.

*In re Lindo's Tours, USA, Inc.*, 55 B.R. 475, 478 (Bankr. M.D. Fla. 1985). There is no reason for

the Court to discuss whether or not Group Counsel would have satisfied the first part of the test

since the Court finds that they failed the second part. Group Counsel has failed to present any

evidence to the Court that their failure to timely file an application for employment was due to

the mistake of the trustees or any of the above-named debtors. Gallagher has also failed to

explain why Group Counsel chose to file their applications in September of 2006 when Gallagher

alleges he discovered the debtors' bankruptcies sometime in 2003 and 2004, which is a delay of 2

years. The *In re Lindo's Tours, USA, Inc.* case does further note that if the non-approved

attorney provided a beneficial interest to the estate, then the court may approve the attorney's

employment and fees. *See* 55 B.R. at 478-79. However, the 5th Circuit case the *In re Lindo's

Tours, USA, Inc.* court cites to says that courts may do so based on their equitable powers. *See*

*Fanelli v. Hensley (In re Triangle Chems., Inc.)*, 697 F.2d 1280, 1289 (5th Cir. 1983). Based on

the facts of this particular case, this Court declines to use its equitable powers in this manner.

Therefore, to the extent Group Counsel is seeking nunc pro tunc approval of their applications,

they are denied.

THEREFORE IT IS ORDERED AND ADJUDGED:

1) Group Counsel's applications for employment, fees, and approval of the

settlement offers in the following Chapter 7 cases are DENIED WITHOUT

PREJUDICE: (a) Hannah Scott Moore; (b) Lue Ethel McCaskey; (c) Freddy M.

Folkes; (d) James Marshall Glaze; and (e) Helen Gaye Shipp.

2)    The Court has previously approved the employment of Richard A. Freese in Betty Jo Ford's case.  Therefore, to the extent Group Counsel's application in Ms. Ford's case seeks employment or fees beyond Mr. Freese, it is DENIED. However, the application to compromise is GRANTED.  Mr. Freese is awarded $379.51 in fees and $11.27 for expenses.[10]

3)    Group Counsel's applications for employment, fees, and approval of the settlement offers in the following Chapter 13 cases are DENIED WITHOUT PREJUDICE unless a written request for employment is filed within 20 days of entry of this order: (a) Evonne Pelt Lawson; (b) Willie Anthony Hixon; (c) Walter James Bell; (d) Georgia M. Barron; (e) Timothy Keith Lane; (f) Willie Mae Leonard; (g) Jean Carolyn Crosby; (h) Raymond Lee Huber; (i) Eddie Lee Alston; (j) Della R. Gilmore; (k) Elmer NMN Thomas, Jr.; and (l) Kitty Jones Yates. Beyond the issue of employment, the remainder of Group Counsel's application in Ms. Yates's case is deemed moot.  Should Group Counsel request employment in any of the above cases, approval of any fees will require an application based upon hours worked after the official date of employment.  Once counsel is employed, counsel may renew their motions to compromise debtors' claim by written request to do so.

4)    The applications for employment, payment of fees, and approval of settlement are GRANTED in the following cases: (a)  Helen Marie Thompson; (b) Jefferson

---

[10]This figure was derived from Group Counsel's application to employ, payment of fees, and approval of settlement filed in Ms. Ford's case on September 25, 2006.

Davis; (c) James E. Rogers; (d) Ruby Lee Henderson; and (e) Patricia

Carstarphen.


Dated:   December 7, 2006


WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE


MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

23